MRS. R. J. McNATT *v.* BERT B. LAREY, EXECUTOR AND TRUSTEE UNDER THE WILL OF FRANK BENTLEY, DECEASED, ET AL

5-5895                                                  480 S.W. 2d 562

Opinion delivered May 29, 1972

W. H. *Arnold, Jr., Richard S. Arnold,* and *Arnold & Arnold,* for appellant.

*Tackett, Moore, Dowd & Harrelson* by: *C. Wayne Dowd,* and *Wheeler, Watkins, Hubbard, Patton & Peek* by: *Larry Wright,* for appellees.

JOHN A. FOGLEMAN, Justice. This case involves the construction of the will of Frank Bentley, insofar as it relates to a devise to Mrs. R. J. McNatt, a friend of the testator and his tenant for about 15 years on the lands involved. The devise is made in Item "FOURTH" of the will, which reads:

At this time I have leased to Mrs. R. J. McNatt (along with her husband, R. J. McNatt, Sr.) the following real estate situated in Miller County, Arkansas, to-wit: * * *for the sum of $50.00 per month, rental, payable in advance, said original lease being for a term of 3 years, beginning February 4, 1964, and ending January 31, 1967; and extended for an additional three years, from January 31, 1967, to January 31, 1970, upon the same terms and conditions as the original lease. At my death, I give, devise and bequesth to Mrs. R. J. McNatt, the right to continue to lease said property for so long as she desires to lease said property, upon the same terms and conditions as is now leased, or, if she should elect to do so, after my death, I give, and devise to her the option to purchase said property for the sum of Sixteen Thousand and No/100 ($16,000.00) Dollars, the payments to be made on same at the rate as the rental on the property which is $50.00 per month, until the purchase price is paid in full.

I hereby authorize and empower my Executor and Trustee, hereinafter named, to execute any and all deeds, conveyances and papers necessary to effect said conveyance to Mrs. R. J. McNatt, in the event she exercises her option to purchase said property.

In the event Mrs. McNatt should elect not to exercise the option to purchase, then she is to notify my said Executor and Trustee, by certified mail, thirty (30) days before the expiration of her lease on said property, and upon such notification, then this property shall become a part of the residue of my estate, and disposed of as hereinafter set forth.

Mrs. McNatt exercised the option to purchase on January 18, 1971. The executor proposed that the devise be carried into effect by an "Installment Vendor's Lien Note" for the amount of the purchase price, with interest at 6% per annum, computed monthly, payable in monthly installments of $50 each, with the purchaser having the privilege of paying interest at any time she chose in order to reduce the sum due as principal and interest. This note was to be made in connection with a contract of sale proposed by the executor setting out the terms as to payment of the purchase price but giving the purchaser the right to make prepayments of all or any part of the consideration, in addition to the prescribed monthly payments.

The probate court held that appellant's exercise of her option to purchase was effective on October 20, 1971, and that she was required to execute a note and contract on the terms proposed by the executor in order to effectuate her purchase of the lands. Appellant contends that she should not be required to pay interest on the purchase price or unmatured installments thereof, that the effective date of the purchase was January 19, 1971, the date notice of the exercise of the option was received by the executor, that the purchase should be carried into effect by a warranty deed reserving a vendor's lien and that she should have the revenues from the property after the effective date of her purchase. Since

we agree with appellant, we reverse the judgment of the probate court.

At the time of the testator's death, Mrs. McNatt was in possession of the property under an extension of the terms of a lease executed in 1964. The lease provided for rental payable in advance with $40 per month allocated to a house on the property and $120 per year to pasture. There is a provision in the lease for pro rating the pasture rental at the rate of $10 per month during the last year of the lease, since the pasture rent had been prepaid up until October 15, 1964, while the original term of the lease ran from February 1, 1964, to January 31, 1967. At the time of Bentley's death on December 12, 1970, Mrs. McNatt had paid the pasture rental for one year beginning in October, 1970. She also had paid the house rental for September, October, November and December 1970. After Bentley's death, she continuted to pay the house rents to his estate.

Mrs. McNatt was agreeable to the retention of a vendor's lien on the property, and acknowledged that she should pay taxes on the land and carry insurance. She did pay the 1970 taxes. She testified that she first knew of the probate of the Bentley will on Saturday, January 16, just before she exercised the option to purchase. The executor acknowledged that if interest were charged, the purchase price could never be paid at the rate of $50 per month because the interest would exceed the monthly payments, and the total debt would increase rather than decrease. In an action on a contract, we found that it was unreasonable to believe that a purchaser would enter into such an agreement. *Belew* v. *Griffis*, 249 Ark. 589, 460 S.W. 2d 80.

Appellees contend that the testator intended that the executor determine the terms and conditions of the sale, except as specifically set out in the fourth item of his will. They rely upon the authorization to the executor to execute any and all deeds, conveyances and papers necessary to effect said conveyance to Mrs. McNatt, coupled with Item FIFTH and the first sentence of Item EIGHTH, which are:

All the rest, residue and remainder of my property, real, personal and/or mixed including all moneys in the bank, either checking or savings accounts, bonds and all personal property of every kind and nature, whether in Miller County, Arkansas, or any other State of the United States of which I shall be seized or possessed, or to which I shall in any way be entitled at the time of my death or over which I may have any power of appointment, either by Will, deed or otherwise, I give, devise and bequeath to Bert B. Larey, IN TRUST, however, for the purposes of carrying the provisions of this will into effect, and for the use and benefit of the Temple Memorial Crippled Children's Home, Texarkana, Arkansas.

To that end, I authorize and empower said Bert B. Larey to convert any real property left at my death into cash, and hereby authorize and empower my said Trustee at his discretion, as to time, to sell and dispose of all or any part of my real or personal property, at public or private sale or sales for such price or prices and upon such terms and conditions as to him may seem best, with power to carry out the provision of the Fourth Item hereof, as provided therein, along with selling and converting any and all other properties into cash, giving my said Trustee full power and authority to execute and acknowledge deeds, leases and any and all other instruments of conveyances necessary, and it is my intention that such conveyances shall be sufficient in law, and upon full compliance being made with the terms of any such sale or sales, thereupon; * * *

I appoint Bert B. Larey as Executor (and as Trustee hereinbefore named), and direct that upon my death that my said executor take immediate possession of all of my estate, giving him full power to execute all papers necessary for carrying out the provisions of this my last will and testament, until the administration is closed.

Appellees take the position that title to the land vested immediately in the executor as trustee as a part of the testator's residuary estate, and, since this was the only real estate owned by Bentley when he died, the provisions authorizing the trustee to convert his real property into cash apply to this transaction so that the terms and conditions of the sale to Mrs. McNatt were to lie within the discretion of the trustee. They particularly emphasize the phrase "with power to carry out the provision of the FOURTH Item."

We do not agree that this property would be a part of the residuary estate before Mrs. McNatt notified the executor and trustee that she elected not to purchase the lands. When we read the entire will and particularly those provisions hereinabove set out, we are unable to say that the power to carry out *the provision* of the FOURTH Item means anything more than a recognition of that item and the powers there invested in the trustee, and a grant of the additional power to dispose of the property when it did become a part of the residuary estate as provided in the FOURTH Item of the will. We cannot accept a construction of the will that would result in an installment sale in which the purchase money debt for which Mrs. McNatt would be personally liable would constantly increase in spite of timely payment of monthly installments prescribed. The will provision that payments be made at the rate of $50 per month "until the purchase price is paid in full" would thereby be rendered meaningless.

Appellant also objects to the probate judge's holding that her exercise of the option gave her the right to purchase, effective October 20, 1971, the end of the term for which she had paid the pasture rental prior to Bentley's death. We do not find anything in the will which requires this holding. As we view it, Mrs. McNatt's right to purchase became fully effective on the date she gave notice of the exercise of her option. The only significance of the termination of her lease, if indeed it did terminate on October 20, 1971, was that Mrs. McNatt's election not to purchase was required 30 days before that date.

We do not know of any reasons why the effective date of the purchase should be delayed until a will contest was barred, as argued by appellees, who cite no authority to support this contention.

The probate court rejected certain objections made by appellant to the contract and vendor's lien note proposed by appellees. She insists that the sale be made by deed retaining a vendor's lien, particularly in view of the fact that the property has been appraised at $52,500. She objected to provisions for forfeiture for failure to perform with recovery and retention by appellees of installments paid as rental for the use and occupancy of the property prior to the forfeiture, and to the fact that the note is contradictory to the contract in that it provides for acceleration and foreclosure rather than forfeiture. In view of the desirability of appellant's having evidence of her purchase which is subject to record and in view of the long period of time required for full payment of the purchase price in monthly installments and in order to facilitate alienability by appellant, the majority of the court feels that the sale and purchase should be carried into effect by appropriate deed retaining a vendor's lien. The deed should provide for some reasonable notice giving appellant a grace period for curing any defaults on her part.

Appellant also argues against a restriction by the proposed contract to performance by her personally rather than by her heirs and assigns. This was inserted on the ground that the privilege of purchasing at such a modest price was personal to her. While it might have been argued with some force that the option was personal to Mrs. McNatt, once she exercised that option, her purchase was effective, and there should be no limitation or restriction on her assigning her contract, alienating the property, or descent of her rights under our laws of descent and distribution. We do not consider other objections by appellant as material.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.